# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT SPARANEY,

       Plaintiff,

       v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

       Defendant.

CIVIL ACTION NO. 3:20-cv-02054

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Robert Sparaney, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On June 17, 2014, Sparaney protectively filed an application for disability insurance benefits, asserting a disability onset date of June 24, 2013. His claim was initially denied by state agency reviewers on December 18, 2014. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on January 3, 2017, before an administrative law judge, Therese A. Hardiman (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Josephine A. Doherty. The plaintiff was represented by counsel at the hearing.

On March 20, 2017, the ALJ denied Sparaney's application for benefits in a written decision. The plaintiff sought further administrative review of his claims by the Appeals Council, and on July 31, 2018, the Appeals Council vacated the ALJ's March 2017 decision and remanded the matter for further proceedings. In particular, the ALJ was instructed to re-evaluate the claimant's mental impairments, re-evaluate the claimant's physical residual functional capacity, and obtain additional vocational expert evidence if necessary.

A second video hearing was subsequently held on January 25, 2019, before the same ALJ. In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Carmine Abraham. The plaintiff was represented by counsel at this second hearing.

On July 2, 2019, the ALJ denied Sparaney's application for benefits once again in a second written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Sparaney was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Sparaney had not engaged in substantial gainful activity during the period between his alleged disability onset date, June 24, 2013, and his date last insured, December 31, 2018.[2] At step two, the ALJ found that Sparaney had the severe impairments of: degenerative disc disease / degenerative joint disease of the lumbar spine; status post lumbar fusion; major depressive disorder; and panic disorder.

At step three, the ALJ found that Sparaney did not have an impairment or combination of impairments that meets or medically

---

[2] *See generally* 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.130.

equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In addition to his physical impairments, the ALJ considered Sparaney's limitations in four broad functional areas as a result of his mental disorders, finding moderate limitations in his ability to concentrate, persist, or maintain pace and finding mild limitations in his ability to understand, remember, or apply information, his ability to interact with others, and his ability to adapt or manage oneself. *See generally* 20 C.F.R. § 404.1520a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Sparaney's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Sparaney had the RFC to perform "light work" as defined in 20 C.F.R.

§ 404.1567(b),[3] with the following limitations:

> [H]e requires a sit/stand option at will or direction of the individual with occasional left lower extremity pushing/pulling, occasional climbing, balancing, stooping, kneeling, crouching[,] and crawling, but never climbing on ladders. He must avoid vibrations and hazards, such as heights and moving machinery. The claimant is limited to unskilled work activity . . . that is low stress, defined as involving only occasional decision-making and only occasional changes in the work setting.

(Tr. 24.)

In making these factual findings regarding Sparaney's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how she weighed the various medical opinions in the record. *See generally* 20 C.F.R. § 404.1527; Soc. Sec. Ruling 96-2p, 1996 WL 374188.

At step four, based on this RFC and on testimony by the vocational

---

[3] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

expert, the ALJ concluded that, during the period between his alleged disability onset date and his date last insured, Sparaney was unable to perform his past relevant work as actually and generally performed.

At step five, the ALJ concluded that, during the period between his alleged disability onset date and his date last insured, Sparaney was capable of performing other jobs that exist in significant numbers in the national economy. Based on his age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Sparaney was capable of performing the requirements of representative occupations such as folder, DOT # 369.687-018, sorter, DOT # 222.687-014, and inspector, DOT # 762.687-014. Based on this finding, the ALJ concluded that Sparaney was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on September 10, 2020, making the ALJ's July 2019 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on November 5, 2020. The Commissioner has filed an answer to the complaint, together

with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Sparaney asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate a medical opinion by a consultative examining physician; (2) the ALJ failed to properly evaluate a medical opinion by consultative examining psychologist; and (3) the ALJ failed to consider evidence from a treating physician recommending that Sparaney undergo further back surgery.[4]

---

[4] The plaintiff's brief articulated two generalized claims of error: (1) the ALJ erred in finding that Sparaney did not meet listings 12.04 or
*(continued on next page)*

## A. Evaluation of Medical Opinions

The plaintiff contends that the ALJ erred in her evaluation of the medical opinions provided by a consultative examining physician, Jay Willner, M.D., and a consultative examining psychologist, John Laurence Miller, Ph.D.

### *1. Evaluation of Examining Physician Opinion*

The plaintiff contends that the ALJ erred in her evaluation of the opinion of an examining physician, Dr. Willner, who performed a medical examination of Sparaney on November 12, 2014, at the request of the state agency. The plaintiff contends that the ALJ erred in assigning only "some weight" to Dr. Willner's opinion with respect to certain functional limitations, which may have been dispositive of Sparaney's ability to perform work in the occupations identified by a vocational expert in connection with step five of the sequential evaluation process.

At the request of state agency reviewers, Dr. Willner conducted a consultative internal medicine examination of Sparaney on November

---

12.06; and (2) the RFC assigned to Sparaney by the ALJ is not based on substantial evidence. Although not clearly articulated by plaintiff's counsel, a close reading of the plaintiff's brief reveals that both of these very generalized grievances rest on the three specific errors we have articulated above.

12, 2014. In his examination report, Dr. Willner noted that Sparaney had experienced a work-related back injury, which involved herniation in the lumbar region. After first attempting to treat it with physical therapy, Sparaney underwent a lumbar fusion in July 2014. At the time of the examination, Sparaney reported left leg numbness and pain and difficulty walking. Sparaney had attempted physical therapy but was unable to tolerate it. Pain management with injections was attempted, but Sparaney had an allergic reaction. Sparaney was unable to treat with opiate pain medications due to a history of pain medication addiction, for which he was being treated with suboxone. Sparaney also had a recent diagnosis of hepatitis C, for which he had not received any treatment. Sparaney reported living with his fiancée, and he reported being unable to do any activities of daily living without assistance. (Tr. 555–58.)

On examination, Dr. Willner observed Sparaney's gait, noting that he took short, slow, cautious steps without assistance of his cane, and slightly larger but still cautious steps with a cane. Sparaney was unable to walk on his heels and toes due to poor balance and pain. He was only able to do a minimal squat—less than half. His stance was "hunched over." Sparaney needed no help getting on and off the exam table, and he

was able to rise from a chair with difficulty. Dr. Willner found no scoliosis, kyphosis, or abnormality in the thoracic spine. Straight leg raise test on the right side was positive at 10 percent, confirmed sitting. Straight leg raise test on the left side was positive at 20 percent, confirmed sitting. Dr. Willner found no evident joint deformity. He found joints to be stable and nontender, with no redness, heat, or effusion. Dr. Willner recorded a diagnosis of low back pain with a guarded prognosis. (*Id.*)

Together with his examination report, Dr. Willner prepared a medical source statement of ability to do physical work-related activities, in which he provided his medical opinion with respect to Sparaney's functional limitations. In this statement, Dr. Willner found that Sparaney was capable of lifting or carrying up to 20 pounds occasionally, but no amount of weight frequently. He found that Sparaney could sit for a full eight hours per workday, stand for up to two hours per workday, and walk for up to 30 minutes per workday, provided he was permitted to change positions after one hour of sitting, ten minutes of standing, or five minutes of walking. He found that Sparaney's use of a cane was medically necessary, and that Sparaney was unable to ambulate more

than 10 feet without it. He found that Sparaney could occasionally handle, finger, feel, push, or pull with either hand, but he could never reach with either hand. He found that Sparaney could only occasionally use his right foot to operate foot controls, and he could never use his left foot to operate foot controls; in support, he referenced his examination findings that Sparaney had exhibited 4/5 strength in his right lower extremity, but only 3/5 strength in his left lower extremity. Dr. Willner found that Sparaney could occasionally stoop or crawl, but he could never balance, kneel, crouch, or climb stairs, ramps, ladders, or scaffolds. He found that Sparaney could tolerate frequent exposure to vibrations, but only occasional exposure to moving mechanical parts, extreme temperatures, humidity or wetness, and dust, odors, fumes or other pulmonary irritants, and no exposure at all to unprotected heights or operating a motor vehicle. (Tr. 559–64.)

When a non-treating medical source provides a medical opinion, the ALJ is required to consider it and decide what weight to give to it. *See* 20 C.F.R. § 404.1527(c). The following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and

extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(5). None of these factors may be omitted or disregarded by the ALJ in considering the weight of the opinion. *See Casillas v. Astrue*, 671 F. Supp. 2d 635, 643–44 (E.D. Pa. 2009) (stating that the ALJ "must consider" the factors set forth in 20 C.F.R. § 404.1527(c) in determining what weight to give a medical opinion); *Waldron v. Astrue*, No. 1:07-CV-2040, 2008 WL 4452350, at *1 (M.D. Pa. Sept. 30, 2008) (same). In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. § 404.1527(c)(6).

The ALJ clearly considered Dr. Willner's opinion, reviewing his findings in detail, and noting that his findings are not duplicated anywhere else in the record, including Sparaney's treatment records. (Tr. 27.) Ultimately, the ALJ found Dr. Willner's opinion to be entitled only to "some weight." (Tr. 32.) In support, the ALJ stated:

> [Dr. Willner's] finding of light exertional lifting and

carrying[5] and left pushing and pulling is well supported and included in the established residual functional capacity assessment. The balance of the opinion including the standing and walking limitations, remaining push/pull, reach, complete postural limitations and environmental limitations are not explained with signs or laboratory findings, no[t] supported or consistent with his reported examination findings and are afforded little weight.

(*Id.*) The ALJ also provided further, fairly extensive—albeit somewhat incoherent—elaboration on the findings that she afforded "little weight," particularly concerning the consultative examining physician's finding

---

5 Notwithstanding this characterization by the ALJ, we note that Dr. Willner's findings with respect to Sparaney's ability to lift and carry was *not* consistent with "light work" as defined by the agency's regulations. While Dr. Willner found that Sparaney could lift or carry up to 20 pounds occasionally, he also found that Sparaney could lift or carry *no amount* of weight frequently. *Cf.* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with *frequent lifting or carrying of objects weighing up to 10 pounds.*") (emphasis added). Thus, Dr. Willner's findings are consistent with "sedentary work" at most. *See id.* § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."). This error, however, is harmless, as the record also includes the medical opinion of a state agency medical consultant, Leo P. Potera, M.D., who found that Sparaney was capable of lifting or carrying up to 20 pounds occasionally with frequent lifting or carrying of up to 10 pounds. (Tr. 223.) The ALJ considered Dr. Potera's opinion and afforded it "great weight." (Tr. 32.) The plaintiff does not challenge the evaluation of Dr. Potera's opinion in this appeal. Thus, notwithstanding Dr. Willner's more restrictive lift/carry findings, there is substantial evidence in the record to support the ALJ's finding that Sparaney was capable of performing light work.

that Sparaney needed to use a cane to ambulate:[6]

> In this case, [the claimant] is seen for a one-time consultative examination by an evaluating, not treating source. [Dr. Willner] saw him once, did not review part or all of the claimant's records and did not perform any testing (such as functional capacity, imaging[,] or other testing) and relied exclusively upon the claimant and his fiancée's self-reporting. [Dr. Willner's] exam findings note[] [that] he does not appear to be in "painful distress" and his gait is short slow cautious steps *without assistance of the cane* and with his cane takes cautious steps with slightly larger gait. He is able to rise from the chair without difficulty and with no reference to need for assistance of a cane or other assistive device. Strength is reported to 3/5 on the left and 4/5 on the right with no sensation loss, positive [straight leg raise] on the right at 10 degrees and left at 20 degrees . . . , no joint deformities, intact reflexes[,] and no neurological deficits. Otherwise, his findings are reported to be normal. Nowhere in this evaluation report does Dr. Willner state that a cane or other assistive devi[c]e is medically necessary or require[d] for ambulation, weight bearing[,] or balance. Instead, he checks a box in the medical source statement and offers no support in terms of signs or laboratory findings to support his conclusion. As noted above, the claimant was fully capable of ambulating without the cane at this examination and there is no evidence in the doctor's report or opinion establishing the necessity of the same reported by the doctor which would be based on actual signs or laboratory findings[.] There is no evidence adduced by the doctor identifying why the cane would be necessary. The opinion as to

---

[6] This passage appears to be in response to the mandate in the Appeals Council's order remanding the case for further consideration of this and other issues.

being medically necessary by a one-time evaluator does not establish the basis upon which this opinion is formed such as fracture, muscle disorder, amputation[,] or neurological condition identified to support the need for an assistive device nor does the doctor identify if the same is for weight bearing, ambulation[,] or balance. Beyond this, the doctor also checks the box that the claimant would be able to carry things in his other hand. As such, the undersigned finds that the doctor's opinion is not well supported or consistent with his own findings. Again, Dr. Willner did not prescribe the cane, did not undertake a review of records to make or set forth and support his checked box opinion[,] and is not a treating source with longitudinal contact and experience with the claimant upon which this antalgic gait and [this] use of the cane is noted by his providers, however, there is no evidence in the other providers['] records that the cane was prescribed at the time of the consultative examination in November 2014 or that i[t] was well supported by the provider who later prescribed the cane in June 2016 upon his first appearance at RediCare. Longitudinally, as reviewed above, Dr. Willner's check the box opinion of the medical[] necessity of a cane is clearly not well supported or consistent with the longitudinal evidence of record. As noted above by his treating source note of January 2015 report he is doing well without back or leg pain, he denied weakness and numbness and feels he is improving with water therapy. *His gait is reported to be normal and unantalgic*[.] There is no reference to his use of a cane. He is noted to have no pain on range of motion of the hip, but did have expected limited lumbar range of motion and mild discomfort on flexion and extension. His sensation was intact, his strength was 5/5 in all muscle groups bilaterally and negative straight raise bilaterally. As such, limited weight can be afforded Dr. Willner's opinion as to the use of the cane and medical[]

necessity for the same.

(Tr. 29–30 (citations omitted).)

In determining the amount of weight to give Dr. Willner's opinion, the ALJ here clearly articulated her consideration of factors (1) and (2), expressly describing Dr. Willner as a "consultative examiner" (Tr. 32) who saw Sparaney "for a one-time consultative examination" (Tr. 29) only. With respect to factors (3) and (4), the ALJ's decision clearly documents her consideration of the opinion's lack of support by medical evidence, and its inconsistency with the record as a whole. (*Id.*) There is no apparent indication in the record of Dr. Willner's medical specialization. In addition to the enumerated factors, the ALJ considered the nature of the form report by which Dr. Willner's opinion was conveyed, which courts have recognized as generally entitled to little weight in this context.[7] No additional factors appear to have been brought to the ALJ's attention for consideration.

Accordingly, we find that there is substantial evidence in the administrative record to support the ALJ's findings that Dr. Willner's

---

[7] *See, e.g.*, *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

opinion with respect to standing and walking limitations, pushing, pulling, and reaching limitations, postural limitations, environmental limitations, and the medical necessity of the use of a cane to ambulate were entitled to "little weight," and her determination of the weight given to Dr. Willner's opinion was adequately explained and otherwise based on a correct application of relevant law.

### 2. Evaluation of Examining Psychologist Opinion

The plaintiff contends that the ALJ erred in her evaluation of the opinion of an examining psychologist, Dr. Miller, who performed a psychiatric evaluation of Sparaney on November 12, 2014, at the request of the state agency. The plaintiff contends that the ALJ erred in assigning "little weight" to Dr. Miller's opinion with respect to mental functional limitations, which may have been dispositive of whether Sparaney had an impairment or combination of impairments that met or equaled the severity of the listed impairments at step three of the sequential evaluation process.

At the request of state agency reviewers, Dr. Miller conducted a psychiatric evaluation of Sparaney on November 12, 2014. In his evaluation report, Dr. Miller noted that Sparaney was currently treating

with a psychiatrist, Dr. Leslie Seiden, whom he had been seeing monthly for more than five years. He noted that Sparaney reported difficulty sleeping, a loss of appetite, and depression that had become severe since his back surgery in September 2014. Sparaney reported feeling depressed all the time, with symptoms including crying spells, loss of usual interests, fatigue, loss of energy, and diminished self-esteem. Sparaney reported excessive apprehension and worry, with panic attacks occurring three times per week on average. Sparaney reported a history of analgesic medication abuse, which had led him to refuse to take analgesic medication now in spite of severe back pain due to his concerns about a relapse. Sparaney reported dressing, bathing, and grooming himself, but only with help. He reported that his fiancée did the cooking, cleaning, laundry, shopping, and money management. Sparaney reported that he could not take public transportation himself or drive, and he had only one friend. He reported getting along well with his family. Daily activities included watching television and listening to the radio, but no hobbies. (Tr. 545–49.)

On examination, Dr. Miller observed that Sparaney exhibited a cooperative demeanor with apparently poor social skills due to what

appeared to be significant cognitive deficits. Sparaney presented with a disheveled mode of dress and poorly groomed. Eye contact was very poor, with his gaze downcast for almost the entire evaluation. Sparaney's speech was mumbled, his expressive language evidenced significant word-finding deficits, and his receptive language was adequate. Sparaney's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia. His affect was severely depressed, his mood was dysthymic, and his sensorium was clear. Dr. Miller observed that Sparaney's orientation was impaired as to place and time. He found Sparaney's attention and concentration to be "[m]ildly impaired due to anxiety," and Sparaney's memory skills to be "[s]everely impaired due to emotional distress secondary to depression and suspected cognitive deficits." Dr. Miller noted that Sparaney's intellectual functioning was below average, with a somewhat limited general fund of information. Sparaney's insight was fair and his judgment good. (*Id.*)

Based on this evaluation, Dr. Miller found that psychiatric and cognitive problems may significantly interfere with Sparaney's ability to function on a daily basis. He diagnosed Sparaney with major depressive

disorder, single episode, panic disorder, pain disorder due to psychological and medical factors, substance use disorder in sustained remission, and rule-out major neurocognitive disorder, with a guarded prognosis "given what appear to be quite serious problems." Dr. Miller recommended that Sparaney continue with his current psychiatrist and psychological treatment. (*Id.*)

Together with his examination report, Dr. Miller prepared a medical source statement of ability to do mental work-related activities, in which he provided his medical opinion with respect to Sparaney's mental functional limitations. In this statement, Dr. Miller found that Sparaney had marked limitations in his ability to understand, remember, and carry out instructions due to the severe memory deficit observed in evaluation. This included marked limitations in his ability to understand, remember, and carry out both simple and complex instructions, and his ability to make judgments on both simple and complex work-related decisions. Dr. Miller also found that Sparaney had marked limitations in his ability to interact appropriately with others due to pain and depression preventing normal interaction. This included marked limitations in his ability to interact appropriately with

supervisors, coworkers, or the public and his ability to respond appropriately to usual work situations and to changes in a routine work setting. Dr. Miller further found that Sparaney was unable to "perform *any* daily living without assistance" based on his self-reported history. (Tr. 550–52.)

The ALJ clearly considered Dr. Miller's opinion, reviewing his findings in detail at various points throughout her decision. (Tr. 21–22, 26, 30–31.) Ultimately, the ALJ found Dr. Miller's opinion to be entitled to "little weight." (Tr. 30.) In support, the ALJ stated:

> There is no explanation in terms of signs and laboratory findings to support each marked limitation[]. The doctor is not a treating source and claimant only saw him once. The doctor seems to have relied exclusively upon the claimant's self-reporting and not upon any actual objective observation and laboratory finding. Further, there is no evidence that the doctor's findings are confirmed or reported anywhere else in the longitudinal record. Thus, longitudinally, the doctor's opinion is clearly not well supported or consistent with the evidence of record. The undersigned notes that one would expect an individual with marked limitations to have required or at least been referred for psychological or psychiatric evaluation, work up[,] and treatment. [H]ere we have a dual diagnosis substance abuse treatment that the claimant is engaging in. He is not getting any individual therapy or counseling for a mental impairment. One would expect this individual would have required inpatient hospitalization, partial

hospitalization[,] or other form of more intensive mental health intervention[.] [W]e do not have that here. Further, one with marked limitations in social functioning would be noted by his other providers with difficulties in interacting or note other social function limitations between the claimant, themselves[,] and their staff. This is clearly absent in the longitudinal evidence of record. The claimant's own testimony does not support marked limitations. The claimant sees Dr. Seiden for his Suboxone supply and attends a group session once a month. He takes medications and testified he gets along good with his girlfriend and with people in general. He did not identify any issues in his ability to interact with anyone and the longitudinal record is devoid of any such evidence. As such, little weight can be afforded this opinion as it is clearly not well supported on the face of the opinion and is clearly not well supported or consistent with the doctor's own evaluation or the longitudinal evidence of record.

(Tr. 30–31.)

In determining the amount of weight to give Dr. Miller's opinion, the ALJ here clearly articulated her consideration of factors (1) and (2), expressly describing Dr. Miller as a "consultative psychological examiner" who "is not a treating source and claimant only saw him once." (Tr. 30.) With respect to factors (3) and (4), the ALJ's decision clearly documents her consideration of the opinion's lack of support by medical evidence, and its inconsistency with the record as a whole. (*Id.*) There is no apparent indication in the record of Dr. Miller's medical specialization.

No additional factors appear to have been brought to the ALJ's attention for consideration. We find no error in the ALJ's consideration of Dr. Miller's opinion or her assignment of little weight to it.

But once Dr. Miller's opinion had been rejected and given little weight, the only other medical opinion concerning Sparaney's mental limitations was the opinion of a non-examining state agency psychological consultant, John D. Chiampi, Ph.D., who had found Sparaney to be "moderately limited" in his ability to maintain concentration, persistence, or pace. (Tr. 221–22.) The ALJ considered Dr. Chiampi's findings and assigned "some weight" to them. (Tr. 31.) In particular, she noted that: "Subsequent to this evaluation, the listings were changed and only some weight can be afforded to this opinion. Weight was afforded to the concentration, persistence and pace limitations as they are consistent with and well supported in the evidence of record." (*Id.*) The ALJ rejected the remainder of Dr. Chiampi's findings with respect to the paragraph B criteria of the listings. (*Id.*)

Thus, the medical evidence considered by the ALJ included an opinion by Dr. Miller finding that Sparaney had marked limitations in two of the paragraph B categories (understanding, remembering, and

applying information and interacting with others) and a mild limitation in another (maintaining concentration, persistence, and pace), to which the ALJ had assigned "little weight," and an opinion by Dr. Chiampi finding that Sparaney had moderate limitations in one paragraph B category (maintaining concentration, persistence, and pace), to which the ALJ had assigned "weight." Despite these findings, and the absence of any other medical opinions on Sparaney's limitations in these areas of mental functioning, the ALJ concluded that he had mild limitations in three categories (understanding, remembering, and applying information, interacting with others, and adapting or managing oneself) and moderate limitations in the fourth (maintaining concentration, persistence, and pace). In support of these findings, the ALJ relied on the following evidence: (1) with respect to understanding, remembering, or applying information, the ALJ found a mild limitation because Sparaney reported being able to use a computer to get on Facebook, reading the Sunday newspaper, and watching crime shows on television; (2) with respect to interacting with others, the ALJ found a mild limitation because Sparaney resided with his girlfriend and reported getting along well with her and others, he attended monthly group sessions with a

psychiatrist, and he failed to identify any issues in his ability to interact with anyone; (3) with respect to maintaining concentration, persistence, or pace, the ALJ found a moderate limitation because the record reflected a longitudinal history of medication management for anxiety and attention deficit hyperactivity disorder, and presumably based on Dr. Chiampi's medical opinion to the extent she gave it weight; and (4) with respect to adapting or managing oneself, the ALJ found a mild limitation because "the documentary record does not support more than mild limitations in this area." (Tr. 23–24.)

"As a lay fact-finder, it is the ALJ's responsibility to secure a medical opinion explaining a claimant's functional limitations. The ALJ is not permitted to speculate based solely upon his or her interpretation of the medical records, and must properly develop the record with regard to facts essential to a disability determination." *Forberger v. Astrue*, Civil Action No. 10-376, 2011 WL 1085684, at \*14 (W.D. Pa. Mar. 21, 2011); *see also Rivera-Torres v. Sec'y of Health & Hum. Servs.*, 837 F.2d 4, 6 (1st Cir. 1988) (per curiam); *Brown v. Barnhart*, 285 F. Supp. 2d 919, 931–32 (S.D. Tex. 2003); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000). Once the ALJ had discounted the opinions of both the consultative

examining psychologist, Dr. Miller, who had found marked limitations in two categories,[8] and the state agency psychological consultant, Dr. Chiampi, who had recorded no findings at all in these same two categories, there was no other opinion evidence in the record with respect to these limitations caused by Sparaney's mental health issues. Thus, the ALJ necessarily used her own lay reinterpretation of the claimant's medical records to come to a conclusion in opposition to that of Dr. Miller, which constitutes error and compels us to conclude that the ALJ's step-three determination with respect to the Paragraph B criteria is not supported by substantial evidence. *See Simpson v. Kijakazi*, Civil No. 1:20-CV-00275, 2021 WL 3869942, at *9–*10 (M.D. Pa. Aug. 27, 2021); *see also McKean v. Colvin*, 150 F. Supp. 3d 406, 418 (M.D. Pa. 2015).

Accordingly, in light of the foregoing, we are unable to conclude that substantial evidence supports the ALJ's step-three determination that Sparaney did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

---

[8] A finding that Sparaney had marked limitations in two of these areas of mental functioning would have satisfied the paragraph B criteria, resulting in a step-three finding that Sparaney was disabled. *See* 20 C.F.R. pt. 404, subpt. P, app.1, §§ 12.04(B), 12.06(B); *see also id.* § 12.00(F).

## B. Recommendation of Future Back Surgery

The plaintiff contends that the ALJ failed to consider evidence from a treating physician recommending that Sparaney undergo a future back surgery, which the plaintiff argues is indicative of a more severe back impairment than the ALJ credited.

The particular factual premise for this argument by the plaintiff appears to be based on a misreading of the evidence. In a December 7, 2016, treatment note, one of the claimant's treating physicians, Dean Mozeleski, M.D., recommended "left L4 and L5 TF ESI" to treat Sparaney's continuing chronic low back and leg pain. (Tr. 636–37.) Based on this, the plaintiff argues that this notation indicates a need for additional, future back surgery. (*See* Doc. 18, at 12–13.) But, as the defendant notes in her responsive brief (*see* Doc. 21, at 35–36 & n.8), this notation—"TF ESI"—reflects a recommendation that Sparaney undergo a significantly less invasive *transforaminal epidural steroid injection*, not surgery. *See generally* Jane C. Ballantyne MD FRCA et al., Bonica's Management of Pain ch. 99 (5th ed. 2018) (discussing various techniques for epidural steroid injections, including TF ESIs), Westlaw LWWPAIN5TH CH99. Indeed, the plaintiff's medical records indicate

that this injection was scheduled to take place one month later, on January 9, 2017, a few days after Sparaney's original hearing date. (*See* Tr. 638; *see also* Tr. 176–77.) The outcome of that particular procedure, however, is not reflected in the record.

This casts light on another issue, not raised by the plaintiff.[9] Some additional medical records were received into the record after the case was remanded by the Appeals Council in July 2018. These included psychiatric treatment records covering the period of February 5, 2017, through October 16, 2018, and medical treatment records covering the period of October 7, 2016, through December 12, 2016. (Tr. 641–57 (psychiatric treatment records); Tr. 658–68 (medical treatment records).) But the record includes *no* medical treatment records dated after December 2016, and as noted above, nothing to indicate the outcome of the TF ESI procedure scheduled to take place on January 9, 2017. Upon close examination, however, the psychiatric treatment records suggest

---

[9] "[A] reviewing court may *sua sponte* address issues in social security cases." *Mangan v. Colvin*, Case No. 12 C 7203, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014); *see also Farley v. Colvin*, 231 F. Supp. 3d 335, 339–41 (N.D. Cal. 2017); *Peterson v. Comm'r of Soc. Sec.*, Civil Action No. 16-2912 (ES), 2018 WL 953345, at *1 n.1 (D.N.J. Feb. 20, 2018); *Womack v. Astrue*, No. CIV-07-167-W, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008).

that Sparaney's back condition may have worsened in the period following his initial administrative hearing and the TF ESI procedure in January 2017. On February 27, 2017, Sparaney reported to his psychiatrist that he was in "agony." (Tr. 644.) On August 14, 2017, he reported that he was having back surgery "next month." (Tr. 651.) On October 9, 2017, he reported that he had back surgery "last week." (Tr. 652.)

The ALJ's second decision was issued on July 2, 2019. Because Sparaney's disability insurance eligibility had expired, the ALJ's decision covered the entire period from his alleged onset date of June 24, 2013, through his date last insured, December 31, 2018. Despite evidence suggesting possible deterioration of Sparaney's back impairment in the two-year period after the latest medical evidence received into the record, the ALJ's physical RFC determination relied solely on medical opinions that predated the apparent worsening of his back condition. Under these circumstances, the ALJ's RFC determination is not supported by substantial evidence. *See Cincola v. Berryhill*, Civil Action No. 3:16-0413, 2018 WL 1065109, at *1 (M.D. Pa. Feb. 27, 2018); *Coniglio v. Colvin*, Civil Action No. 15-40, 2016 WL 4385870, at *12 (E.D. Pa. July 26, 2016); *Kroh*

*v. Colvin*, No. 3:13-CV-01533, 2014 WL 4384675, at \*21 (M.D. Pa. Sept. 4, 2014).

Accordingly, in light of the foregoing, we are unable to conclude that substantial evidence supports the ALJ's physical RFC determination.

## C. Further Administrative Proceedings on Remand

We suggest—but do not order—that the Commissioner reassign this case to a different ALJ on remand. Based on our review of the two written decisions by the ALJ and transcripts of the two administrative hearings conducted before her, it is our impression that the goal of a fair and effective resolution of the plaintiff's application for disability insurance benefits may be best served by such reassignment. *See generally United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 386 (7th Cir. 2010) ("Courts can suggest but cannot require a change of administrative law judges unless the administrative law judge has demonstrated a degree of bias . . . that would disqualify him as a matter of due process from further participation in the litigation . . . .") (citing *Ventura v. Shalala*, 55 F.3d 900, 902–05 (3d Cir. 1995)) (citations omitted).

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Sparaney was not disabled is not supported by substantial evidence. Accordingly, the Commissioner's decision denying his application for disability insurance benefits will be vacated and the case will be remanded for further proceedings consistent with this opinion.

Dated: March 30, 2022                    **_s/Joseph F. Saporito, Jr._**
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge